## People, ex rel. Frank Adams v. Hover, et al.

*District Court of Arapahoe County, Feb. 27, 1902, No. 33673.*

272

John T. Bottom, Milton Smith and E. L. Richardson, for petitioners; H. M. Orahood, H. L. Ritter and Calvin P. Butler, for respondents.

CARPENTER, J.

This matter is now before the court upon general

demurrer to the answer of the respondents to the alternative writ of mandamus.

At the argument upon this demurrer respondent's counsel insisted that the court was in error in its ruling upon the demurrer to the alternative writ, and in deference to the learning and ability exhibited in support of this contention I have given some time to a re-examination of the questions presented by the demurrer to the alternative writ. After such re-examination, and reflection, I am not convinced that the former ruling was erroneous.

It still seems to me that Gen. Sec. 153 of the charter of the City of Denver has no relation to, nor bearing upon, the questions arising in this case. It is settled law that "Where there are in an act specific provisions relating to a particular subject they must govern in respect to that subject as against general provisions in other parts of the statute, although the latter standing alone would be broad enough to include the subject to which the more particular provisions relate." Gen. Sec. 153 is broad enough to include the subject of appropriations to defray the expenses incident to the administration of the powers conferred upon the Fire and Police Board, but there being a specific provision in Gen. Sec. 84 with respect to the appropriation for these expenses, "it must be taken that the latter was designed as an exception to the general provisions."

Attention was directed to the fact that while the law of 1891 in respect of this matter provided that the estimates of the Fire and Police Board should be transmitted directly to the City Council, the corresponding section (Gen. Sec. 84) of the charter of 1893 required that these estimates should be

sent to the Mayor. And from this it is argued that it was intended that the Mayor should pass upon the necessity or expediency of appropriating the amount required by the estimates, and make recommendation to the City Council in respect thereto, and that as Gen. Sec. 153 provides that the City Council is not necessarily bound by the estimates of the Mayor, the effect is to commit the matter finally to the discretion of the City Council. I cannot agree to this contention. The purpose of the change in the statute, in my judgment, was that inasmuch as the Mayor was required to make estimates for nearly if not all the other bureaus and departments of the municipal government, he should know at the time of making up his estimates the amount that would be required by the Fire and Police Board, and thus be more accurately advised as to the sum likely to be available for the bureaus and departments for the expenses of which he is directed to make estimates.

Consideration of the several provisions of the city charter relating to the Fire and Police Board, its duties and its prerogatives, and of the reasons leading up to such legislation, briefly referred to in the former opinion in this case, would seem to leave no room for doubt that the legislature intended that the Board to which it delegated the high, sovereign duty of protecting the lives and persons of citizens and their property should not be from year to year a beggar at the door of the City Council for the means to maintain the force and appliances requisite to a fitting discharge of that duty.

Coming now to the question presented by the demurrer to the answer, its determination involves the interpretation of the concluding clause of Gen.

Sec. 84, "conforming thereto as nearly as the city's finances will permit."

It was suggested in the opinion of the court upon the demurrer to the alternative writ that this clause was susceptible of two interpretations. I still think so, and that there are only two. It is a serious question which of these is correct. It has given and still gives me more concern than any other question that has arisen during this litigation. But that stage of the litigation has been reached where it becomes imperative that one or the other shall be adopted. I think it will be conceded that where a passage in an act, a sentence or clause or word is susceptible of two interpretations, either of which may be within the legislative intent, that should be adopted which seems better calculated to forward in the greater degree the legislative purpose. That is to say, it is the duty of the. court so to interpret the language as will the better suppress the mischief and advance the remedy.

It was determined in the former opinion of the court that it was the purpose of the legislature to remove the administration of the bureaus of fire, police and excise from the control of the Mayor and City Council, to create an independent body through which these several branches of the state's police power should be exercised within that portion of its territory included in the City of Denver. Now to rule that the second interpretation suggested in the former opinion is the proper one, namely "That the amount appropriated to the Fire and Police Board shall approximate the estimates as nearly as may be, due regard being had for the necessities of the other departments," seems to me would have a tendency to render ineffective the legislative plan and to make

its enforcement difficult, for the obvious reason that it would bring under review by the court the admitted discretion of the City Council with respect to other appropriations; a thing not to be thought of unless expressly or by unavoidable implication authorized by law.

If the interpretation first suggested in the former opinion, namely, "That after the charges of the city fixed by law have been cared for in the appropriation bill, if sufficient money remains to appropriate the full sum required by the Board, the City Council shall make such appropriation" be adopted, we are confronted with no such objection as above indicated with respect to the second interpretation, and the legislative plan may be carried out with certainty and without difficulty. I am constrained to rule, therefore, that the city charter contemplates three classes of appropriations, in the order of preference:

1. The charges of the city specifically fixed by charter, as the salaries of the heads of departments and the sprinkling appropriation.

2. A sum sufficient to defray the expenses of the Fire and Police Board incident to the powers granted by the charter.

3. Such other appropriations as may be authorized by the charter.

The first of these may of course easily be determined by consulting the charter. It appears not only by the alternative writ but by the answer that after these fixed charges are provided for there will remain a sufficient amount of the revenue for 1902 to permit the Council to conform entirely to the estimates of the Fire and Police Board.

It is greatly to be regretted that this interpretation of the charter will, during the current year probably greatly embarass in their work many of the bureaus of the municipal governmet, but it is not the right nor the prerogative of the court to make law; it must interpret it to the best of its ability as it finds it written. It may be said, however, that if there will not be sufficient revenue to properly administer the several bureaus other than those of the Fire and Police Board that the fault lies in the first instance with the respondents, because to them is committed the power to raise the revenue sufficient for the city's needs.

The demurrer to the answer is sustained.